IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


HELEN TUCKER and MOUND CITY INC.,
a corporation,

       Plaintiffs,

v.                                      Civil Action No. 5:10CV31
                                                  (STAMP)
STEVEN L. THOMAS, THOMAS BRAD SINGLETON,
SCOTT HAIRE, DON PERRY, FRANK BARKER,
ALEXAS INTERTAINMENT, LLC,
KOFFEE SHOP INC., a corporation,
DONNA KITCHEN, KIMBERLY J. CRUPE,
OHIO VALLEY AMUSEMENT COMPANY,
H.E.B. TECH, LLC,[1] STEVEN EVANS,
M.L.H., LLC[2] and KEYSTONE EXPLORATION, LTD.,

       Defendants.


**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS SINGLETON, PERRY, HAIRE, BARKER, EVANS,
MLH INVESTMENTS, LLC, KEYSTONE EXPLORATION, LTD.,
H.E.B., LLC AND ALEXAS INTERTAINMENT, LLC'S
MOTION TO DISMISS,
GRANTING IN PART AND DENYING IN PART
DEFENDANTS OHIO VALLEY AMUSEMENT COMPANY,
KITCHEN AND CRUPE'S MOTION TO DISMISS,
GRANTING DEFENDANT KOFFEE SHOP, INC.'S
MOTION TO DISMISS,
DENYING AS MOOT DEFENDANTS OHIO VALLEY AMUSEMENT COMPANY,
KITCHEN AND CRUPE'S MOTION FOR JOINDER IN THE MOTION
OF SINGLETON, ET AL. TO DISMISS FIRST AMENDED COMPLAINT
AND DENYING AS MOOT DEFENDANT KOFFEE SHOP'S MOTION FOR
JOINDER IN SINGLETON DEFENDANTS' MOTION TO DISMISS**

---

[1]The defendants believe that the identification of H.E.B. Tech, LLC as a defendant is a misnomer and that the plaintiffs intended to identify H.E.B., LLC.

[2]The defendants believe that the identification of M.L.H., LLC is a misnomer and that the plaintiffs intended to identify MLH Investments, LLC.

I.  Background

The plaintiffs, Helen Tucker and Mound City, Inc., filed a
complaint against the defendants in the Circuit Court of Marshall
County, West Virginia, alleging violations of the Racketeer
Influenced and Corrupt Organizations Act ("RICO"), slander of
title, tortious interference, legal malpractice, invasion of
privacy, fraud, conversion, and civil conspiracy.  Defendants
Thomas Brad Singleton, Scott Haire, Frank Barker, Alexas
Intertainment, LLC, H.E.B., LLC, Steven Evans, MLH Investments, LLC
removed this civil action to this Court pursuant to 28 U.S.C.
§§ 1441, 1446, and 1452.[3]  Following removal, the plaintiffs filed
multiple motions for remand and abstention, but this Court found
that it has jurisdiction over this case based upon its relationship
to ongoing bankruptcy proceedings regarding the bankruptcy estate
of Francis Tucker, plaintiff Helen Tucker's son and the previous
owner of plaintiff Mound City Inc., and defendant Ohio Valley
Amusement Company ("OVA").  This Court also declined to exercise
permissive abstention.  Further, in the same memorandum and
opinion, this Court denied in part and granted in part multiple
motions to dismiss, and directed the plaintiffs to file a more
definite statement.  The plaintiffs complied by filing a first
amended complaint which raised common law claims of slander of

---

[3]These removing defendants and Keystone Exploration, Ltd.
appear by special appearance only, without waiving their objections
to service of process or any other available defenses.

title, tortious interference, legal malpractice, invasion of privacy, fraud, conversion, and civil conspiracy.

In response to the amended complaint, all defendants except for defendant Thomas filed a joint motion to stay all pretrial litigation, and this motion was eventually joined by the plaintiffs. This Court later denied the motion to stay, but issued an extended scheduling order. Additionally, all defendants except for defendant Steven L. Thomas filed renewed motions to dismiss based upon the amended complaint. Defendants Kimberly J. Crupe, Donna Kitchen, OVA, and Koffee Shop, Inc. also filed motions to join in the motion to dismiss filed by defendants Thomas Brad Singleton, Scott Haire, Frank Barker, Alexis Intertainment, LLC, H.E.B., LLC, Steven Evans, MLH Investments, LLC and Keystone Exploration Ltd., insofar as it moves to dismiss this case on the basis of failure to join an indispensable party -- Francis Tucker. All of these motions to dismiss have been fully briefed and are ripe for disposition by this Court.

## II.  <u>Applicable Law</u>

A.   <u>Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction</u>

When a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving the existence of the grounds for jurisdiction by a preponderance of the evidence. <u>Owens-Illinois, Inc. v. Rapid Am. Corp.</u>, (<u>In re The Celotex Corp.</u>), 124 F.3d 619,

628 (4th Cir. 1997) (citing <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989)).

Under a "long-arm" statute, such as West Virginia Code § 56-3-33,[4] a state may enable its courts to exercise personal jurisdiction over non-residents that commit certain acts within the

_____

[4]Section 56-3-33 states, in pertinent part:

(a) The engaging by a nonresident, or by his duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state . . . for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

   (1) Transacting any business in this state;
   (2) Contracting to supply services or things in this state;
                          . . .
   (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, <u>only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her</u>.

W. Va. Code § 56-3-33 (emphasis added).

4

state, or certain acts outside of the state, that have caused injury within the state. See Lozinski v. Lozinski, 408 S.E.2d 310, 315 (W. Va. 1991) ("The intent and benefit of any long-arm statute is to permit the secretary of state to accept process on behalf of a nonresident and to view such substituted acceptance as conferring personal jurisdiction over the nonresident."). Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary to go through the normal two-step formula for determining the existence of personal jurisdiction. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997). Instead, the "statutory inquiry merges with the Constitutional injury," and this Court must determine whether exercising personal jurisdiction is consistent with the due process clause. Id. at 628; see World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

Due process requires that a defendant receive adequate notice of the suit and be subject to the personal jurisdiction of the court. Id. (citations omitted). The exercise of personal jurisdiction over a non-resident defendant is proper only so long as "minimum contacts" exist between the defendant and the forum state, "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

If the defendant's contacts with the forum state provide the basis for the suit, those conducts may establish "specific

jurisdiction." _Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc._, 334 F.3d 390, 397 (4th Cir. 2003). To determine whether specific jurisdiction exists, this Court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" _Id._ (quoting _ALS Scan, Inc. v. Digital Serv. Consultants, Inc._, 293 F.3d 707, 711-12 (4th Cir. 2002)).

If the defendant's contacts with the state are not the basis for the suit, however, then jurisdiction "must arise from the defendant's general, more persistent, but unrelated contacts with the state." _Id._ A plaintiff establishes general jurisdiction by showing that the defendant's activities in the state have been "continuous and systematic." _Id._ (citing _Helicopteros Nacionales de Columbia, S.A. v. Hall_, 466 U.S. 408, 414 & n.9 (1984)).

B.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(5)

A Rule 12(b)(5) motion to dismiss argues for dismissal based upon the insufficiency of service of process under of the Federal Rules of Civil Procedure Rule 4. Federal Rule of Civil Procedure 4(c)(1) provides that the plaintiff is responsible for serving a summons, together with a copy of the complaint, within the time requirements set forth under Rule 4(m). Rule 4(m), in turn, states that a plaintiff has a 120-day period after the filing of the

complaint to effect service.  A court, however, must extend the time for service where a plaintiff who has failed to effect service within the prescribed 120-day period after the filing of the complaint shows good cause for such failure.  Fed. R. Civ. P. 4(m).

C.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."  Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  A court will decline to consider "unwarranted inferences, unreasonable conclusions, or arguments."  Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998).  The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact.  Id.   For

purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a).  Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949).  Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

D.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(7)

The Federal Rules of Civil Procedure further allow defendants to move to dismiss a complaint against them if the plaintiff has failed to join a necessary party to the litigation, as that term is defined by Federal Rule of Civil Procedure 19.  Fed. R. Civ. P. 12(b)(7).  Rule 19 defines a required party as follows:

(1)  **Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court
cannot accord complete relief among existing
parties; or
(B) that person claims an interest relating
to the subject of the action and is so
situated that disposing of the action in that
person's absence may:
(i) as a practical matter impair or
impede the person's ability to
protect the interest; or
(ii) leave an existing party subject
to a substantial risk of incurring
double, multiple or otherwise
inconsistent obligations because of
the interest.

The United States Court of Appeals for the Fourth Circuit has
determined that the inquiry into whether a party must be joined
under Rule 19 and whether failure to join that party should result
in dismissal pursuant to Rule 12(b)(7) is two-step. Owens-
Illinois, Inc. V. Meade, 186 F.3d 435, 440 (4th Cir. 1999). First,
the court must determine whether, pursuant to the definition of the
term delineated in Rule 19(a), "'a party is necessary to a
proceeding because of its relationship to the matter under
consideration.'" Id. (quoting Teamsters Local Union No. 171 v.
Keal Driveway Co., 173 F.3d 915 (4th Cir. 1999). If the party is
deemed to be necessary, the court must then determine if the party
can be joined to the action and if it cannot, "the court must
determine whether the proceeding can continue in its absence, or
whether it is indispensable pursuant to Rule 19(b)." Id.

Rule 19(b) requires the court to consider whether "in equity
and good conscious, the action should proceed among the existing
parties or should be dismissed." The rule further gives factors to

9

be considered in this inquiry, such as "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by [measures other than dismissal]; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder."

Dismissal for failure to join a necessary party should be avoided unless the result of non-joinder "cannot be remedied and prejudice or inefficiency will <u>certainly</u> result." <u>Owens-Illinois, Inc.</u>, 186 F.3d at 441 (emphasis added).

## III.   <u>Discussion</u>

A.   <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

Defendants Evans and Keystone Exploration, Ltd. have challenged this Court's jurisdiction over their persons, arguing that they do not have contacts with the state of West Virginia sufficient to create jurisdiction in this court over them in this case.  Thus, they request that this Court dismiss them from the action pursuant to Federal Rule of Civil Procedure 12(b)(2).  In support of this motion, these defendants argue first that defendant Evans, who is a Certified Public Accountant and a founding partner of a Kentucky accounting firm, is a resident of Kentucky and that he does not maintain or seek any clients in West Virginia, advertise in West Virginia, nor has he ever even been to the state. Further, the defendants aver that the only connection that

10

defendant Evans has with the state and/or this case whatsoever, is that his firm regularly prepares the federal income tax returns of defendants H.E.B. and OVA.  However, according to these defendants, Evans is not the individual who prepares the returns.  With regard to defendant Keystone Exploration, these defendants maintain that it is a Texas oil and gas company that does not conduct business in West Virginia, advertise in West Virginia, or maintain an office within the state.  The only connection that this defendant allegedly has with the state of West Virginia and/or this civil action is that defendants Scott Haire and H.E.B. sub-lease office space from Keystone, and thus Keystone shares the same address with H.E.B.

As previously stated, it is the burden of the plaintiffs in response to a challenge to personal jurisdiction to establish, by a preponderance of the evidence, that personal jurisdiction exists over the challenging defendants.  The plaintiffs have failed to satisfy this burden.  Initially, it is clear to this Court that these defendants do not have nearly enough contacts with the state of West Virginia to establish general jurisdiction over them within the state.  Any connection that these defendants may have whatsoever with West Virginia is sparse and only tangential in that the connection is solely related to other defendants in this action who may be subject to suit in West Virginia.  See Carefirst of Md., Inc., 334 F.3d at 397 (4th Cir. 2003).  Thus, plaintiffs would need

to prove that specific jurisdiction exists by showing evidence of elements of the three-pronged test above-described.[5]

The plaintiffs have offered a five-sentence argument attempting to satisfy their burden of proving that this Court has jurisdiction over these defendants.  This argument presents two arguments in support of jurisdiction; one for each moving defendant.  First, the plaintiffs argue that jurisdiction exists over Keystone because it was cited as "'materially assist[ing]'" the loan commitment made by Alexas Intertainment and H.E.B. in the reorganization of OVA in the United States Bankruptcy Court for the Northern District of West Virginia.  While this does connect Keystone to the parties in this action and to the forum, it does not support a finding that Keystone purposefully availed itself of the protections and benefits of West Virginia law such that it would be constitutionally "reasonable" for this Court to exercise jurisdiction over it in this case.  Nor is there any information whatsoever, from what this Court can discern, that plaintiffs claims arose from this "vouching" for H.E.B. and Alexis Intertainment in the reorganization of OVA.  Thus, while the plaintiffs have offered evidence connecting Keystone to the <u>parties</u> in this case, nothing has been presented to show how Keystone's

_____

[5]"(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'"  <u>Id.</u> (quoting <u>ALS Scan, Inc. v. Digital Serv. Consultants, Inc.</u>, 293 F.3d 707, 711-12 (4th Cir. 2002)).

limited actions within this state are connected to the <u>claims</u> in the complaint.  Thus, the plaintiffs have failed to satisfy their burden of showing that personal jurisdiction exists over Keystone Exploration, Ltd. and it is thus dismissed.

Secondly, the plaintiffs assert that personal jurisdiction over Evans is proper because defendant H.E.B. is an acronym that stands for Haire, Evans and Barker.  They argue that, inasmuch as Evans is a part of H.E.B., he has availed himself to a lawsuit in West Virginia.  Initially, the plaintiffs have offered no support for this assertion, aside from the fact that Evans' last name begins with "E," and the second letter of the name of defendant H.E.B. is also "E."  Further, even if this assertion by the plaintiffs happened to be true, the bare fact that Evans is connected with H.E.B. does not establish personal jurisdiction. For example, if Evans were an original financial contributor to H.E.B., a Nevada limited liability corporation, such that his initial was included in the name, but he was not directly involved in any of the daily business of the entity aside from his financial backing at the outset, there would be no basis upon which to say that defendant Evans purposefully availed himself of the laws of West Virginia solely as a result of his connection with H.E.B. Here there is no assertion that Evans' involvement with H.E.B. is connected to the claims made in the complaint, nor is there any allegation as to the level of his alleged involvement in the company.

13

Further, the plaintiffs do not attempt to argue that Evan's accounting firm's preparation of the income tax returns for OVA and H.E.B. establish his contacts, or that he has other personal connections which are related to this civil action or which would show that he purposefully availed himself of the benefits of the laws of the state of West Virginia in any way at all. Thus, the plaintiffs have also failed to establish by a preponderance of the evidence that this Court has personal jurisdiction over defendant Evans, and the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) will be granted as to this defendant as well.

B.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(5) by Defendants Singleton and Perry

Defendants Thomas Brad Singleton and Don Perry move this Court to dismiss all claims against them because they maintain that the plaintiffs failed to properly serve them pursuant to Federal Rule of Civil Procedure 4. On March 24, 2011, pursuant to Rule 4(m), this Court granted the plaintiffs an additional 90 days to effectively serve these defendants, because effective service had not been achieved within the 120-day time limit established by the rule. These defendants now contend that the plaintiffs have again failed to effectuate service within this extended time period.

In support of this contention, these defendants say that, on June 22, 2011, the 90-day deadline for service on these defendants, a process server attempted to serve defendant Singleton at H.E.B. Technologies, LLC in Fort Worth, Texas. At this time, these defendants say that the process server made inquiry to Lucy

14

Singleton, defendant Singleton's mother, as to whether she was authorized to accept service on behalf of defendant Singleton, and she advised the process server that she was not. The following morning, Lucy Singleton avers that she returned to her desk to find the summons and complaint on her chair. The defendants argue that even if Ms. Singleton had been at her desk and accepted the service for defendant Singleton, she was not an authorized agent, by appointment or law, to receive process on his behalf. These defendants further maintain that defendant Perry was not served with a summons and copy of the complaint at all.

Rule 4(e) provides that service upon an individual within the United States may be made pursuant to state law of either "the state where the district court is located or where service is made" or by "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." The plaintiffs do not contend that defendant Perry has ever been served in any capacity, but it is contended that defendant Singleton was properly served in Fort Worth, Texas by service upon his mother, Lucy Singleton, at the offices of HEB Technologies, LLC. It is noted that the state service rules in both Texas and West Virginia do not vary in any relevant way from those rules above delineated as provided in the

Federal Rules.   See Tx. R. Civ. P. 21(a) and W. Va. R. Civ. P. 4(d)(1).

Clearly, defendant Singleton was not served personally, nor does service at his place of business qualify as service at his "dwelling or usual place of abode."   See Gipson v. Bass River, 82 F.R.D. 122, 125 (D.N.J. 1979).   Therefore, for the service upon Mr. Singleton to be effective, it would have to qualify as service upon his "agent."

The plaintiffs bear the burden of establishing that service of process has been effective.   See Ballard v. PNC Financial Services, Inc., 620 F. Supp. 2d 733, 735 (S.D. W. Va. 2009).   The plaintiffs here contend that, under any of the applicable service rules, the service made upon Lucy Singleton qualifies as service upon an "agent authorized by appointment or by law to receive service of process."   This Court disagrees for two main reasons.   First, the plaintiffs have failed to provide any facts to support their contention that Ms. Singleton qualifies as an "agent authorized by appointment or law to receive process" on behalf of defendant Singleton.

Ms. Singleton informed the process server who attempted to serve her with the summons and complaint in this case, that she was not authorized to accept service on behalf of Mr. Singleton, and her affidavit further confirms that statement. Further, while the plaintiffs state that Ms. Singleton qualifies as an agent of Mr. Singleton, they offer no argument to contradict the statements of

Ms. Singleton and Thomas Singleton with regard to whether she had been appointed in such a position. In fact, there is no evidence whatsoever offered by the plaintiffs to show that defendant Singleton ever intended for Ms. Singleton to serve as his agent to receive process on his behalf. Therefore, for Ms. Singleton to qualify as an agent of Thomas Singleton, such qualification must be by operation of law. Likewise, the plaintiffs have offered no evidence to support their bare assertion that this is the case, and have failed to satisfy their burden of showing that process was effective upon Mr. Singleton.

The plaintiffs offer a definition of "agent" for purposes of service of process which they argue supports their contention that Lucy Singleton qualifies as such on behalf of Thomas Brad Singleton. This definition designates any person, including a family member, who "at the direction of or with the knowledge or acquiescence of a nonresident . . . usually receives and receipts for mail addressed to such nonresident." W. Va. Code § 56-3-33-(e)(1). Again, Ms. Singleton avers in her affidavit that she does not normally accept mail for Mr. Singleton, and the plaintiffs do not offer factual argument to contradict this assertion. There is also no factual argument that the Ms. Singleton qualified, by operation of law, as an agent of Thomas Brad Singleton except that she is his mother and that she was present at his place of employment. This is insufficient, and this Court finds that plaintiffs have not shown that Ms. Singleton

17

qualifies as an agent of Thomas Brad Singleton for purposes of accepting process on his behalf.

Further, the plaintiffs entirely ignore the defendants' assertion that Ms. Singleton did not even accept service on behalf of defendant Singleton. According to Ms. Singleton's affidavit, she refused to accept service, and returned to work the following morning to find the summons and complaint on her chair. The plaintiffs have offered an affidavit of the process server who "served" Ms. Singleton, but this affidavit does not contradict the statements of Ms. Singleton in any regard. All of the relevant rules require individual service to be delivered <u>to an agent</u> of the party sought to be served.[6] This Court does not believe, and the plaintiffs have offered no argument to support the contention that, service by placing the summons and complaint on the chair of an agent[7] when she is not present qualifies as service "to an agent." Thus, the plaintiffs have failed to show that service upon Mr. Singleton was proper.

---

[6]Texas Rule of Civil Procedure 21(a) allows service by, "delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record, as the case may be, either in person or by agent or by courier receipted delivery or by certified or registered mail, to the party's last known address, or by telephonic document transfer to the recipient's current telecopier number, or by such other manner as the court in its discretion may direct." West Virginia Rule of Civil Procedure 4(d)(1)(C) allows service by "delivering a copy of the summons and complaint to an agent or attorney-in-fact authorized by appointment or statute to receive or accept service of the summons and complaint on the individual's behalf."

[7]Assuming, for the sake of argument that Ms. Singleton had qualified as defendant Singleton's agent.

As an alternative argument that dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5) is not proper as to defendant Singleton, and as the only argument of the same as to Mr. Perry, the plaintiffs state, with no factual support, that they believe that Messrs. Perry and Singleton have been actively evading service, and that more time should be granted to serve them. They further request that service by publication be permitted for the same reasons. The plaintiffs have not shown good cause to grant either of these requests.

Federal Rule of Civil Procedure 4(m) provides that failure to serve parties within the 120 day period provided by the rules should only result in dismissal if the plaintiff does not show "good cause for the failure." Here, the plaintiffs attempt to create good cause by asserting that they believe that these defendants have been actively evading service. However, the only support offered for this contention is that Mr. Perry lives in a gated community, and the plaintiffs think that security would direct defendant Perry to not answer the door whenever process servers would attempt to serve him at home. They offer no support for the contention that Mr. Singleton was evading service.

The fact that Mr. Perry lives in a gated community and that the plaintiffs say that they "believe" that these defendants have been evading service is insufficient to show good cause to extend the time for service. Additionally, this Court has already granted the plaintiffs a 90-day extension of time to serve these

defendants.  Thus, the plaintiffs have had over 210 days to serve defendants Singleton and Perry, and have not only failed to do so, but have not provided this Court with any inclination that service had not been successful until the defendants moved to dismiss the case against them on this basis.  As such, good cause to extend the time to serve is not found, and as service of process upon both defendant Singleton and defendant Perry was insufficient, all claims against both of these defendants are dismissed.

C.   Defendants Singleton, Haire, Barker, Perry and Evans' Motion to Dismiss Based Upon Corporate Limited Liability

Defendants Singleton and Perry also move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiffs have failed to state a claim against them individually.  They are joined in this motion by defendants Haire, Barker and Evans.  This motion is based upon the argument that all claims of liability against these defendants individually result from allegedly actions of their companies, and under all applicable law,[8] they cannot be held personally liable for the acts and omissions alleged.

Without deciding which law controls with regard to these defendants' liability in this case, this Court finds that the laws

---

[8]Defendants Singleton, Haire, Barker and Perry maintain that their companies, Alexis Intertainment, LLC, MLH Investments, LLC, and H.E.B., LLC are organized under Nevada law, and defendant Evans says that his company, which is not named as a defendant in this lawsuit, is organized under the laws of the state of Kentucky. However, because defendant Evans is dismissed for lack of personal jurisdiction, this Court will not address Kentucky law.

of Nevada and West Virginia alike shield these defendants from liability for actions performed in their capacities as members of allegedly wrongdoing companies.  Under the Nevada Revised Statute § 86.371, "no member or manager of any limited-liability company formed under the laws of [Nevada] is individually liable for the debts or liabilities of the company."  Further, limited liability of managers and members of corporations under West Virginia Code § 31B-3-303(a) mandates that "the debts, obligations and liabilities of a limited liability company whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the company."

However, members of companies are only shielded from liability for wrongdoings of the company itself.  Members can nonetheless be sued and held liable in their individual capacity for acts done outside the scope of their representation of the company.  <u>See generally</u>, <u>Barath v. Performance Trucking Co., Inc.</u>, 424 S.E.2d 602, 605 (W. Va. 1992).  In Nevada, the statutory section above quoted limits immunity from liability to "the debts or liabilities <u>of the company</u>."  This does not prevent individual liability for actions done by the individual manager or member himself and on his own behalf.  Likewise, § 31B-3-303(a) limits immunity to members and managers of companies to "liability <u>of the company</u>" and further notes that liability cannot exist "<u>solely</u> by reason of being or acting as a member or manager." (emphasis added).

21

Here, these defendants have been sued individually and are named throughout the complaint for individual wrongdoing.  In fact, the complaint never alludes that any of the wrongdoing which is alleged to be attributable to these defendants was done in the name of the companies of which they are members and/or managers.  See, Burnett v. C.B.A. Sec. Serv., 107 Nev. 878 (1991) (employer cannot be held liable for acts of employee when employee's acts were not furthering the business interests of employer).  Simply because these defendants have been sued alongside their companies, does not mean that they are being sued in their capacity as members and/or managers of the same.

Thus, while defendants Singleton, Perry and Evans have been previously dismissed from this case, this motion to dismiss based upon limited liability of members and managers of companies is denied as to all movants.

D.   Defendants' Federal Rule of Civil Procedure 12(b)(6) Motions to Dismiss Counts One, Two, Four, Five, Six and Seven for Failure to State a Claim Upon Which Relief Can Be Granted

All defendants except for defendant Steven Thomas have filed motions to dismiss all claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  These motions thus address all claims other than Count Three, which is alleged against defendant Thomas alone.

Initially, this Court directed the plaintiffs to provide a more definite statement identifying how the defendants that are not specifically named in each claim, but to whom are more generally

referred, were involved in the allegations made to support the claims for relief.  In response to this request, the plaintiffs offered an allegation that

> Defendants Alexas Intertainment, Koffee Shop, Ohio Valley Amusement, H.E.B., M.L.H., and Keystone are all alter egos or instrumentalities of one another and of individual Defendants Singleton, Haire, Perry, Barker and Evans.  Such Defendants have intentionally engaged in sham transactions to create the appearance to third parties, including various courts in West Virginia, that such Defendants are independent entities when in fact many of the Defendants occupy the same offices, have the same telephone numbers, have the same members and operate in reality as one entity with no separate purpose.

(ECF No. 69 *3.)

The plaintiffs then continue to allege throughout the complaint, with no further factual support, that the defendants "individually and collectively" committed the wrongs alleged.  The defendants now argue that this continues to be insufficient to allege claims against defendants not directly named in each claim, because it is an insufficient allegation of liability based upon "piercing the corporate veil" by way of alter ego theory.

As a general rule, corporations are considered wholly separate entities from each other and from those who own them.  See Laya v. Erin Homes, Inc., syl. pt. 1&2 177 W. Va. 343 (1986).  However, this separation is a legal fiction, and the doctrine of "piercing the corporate veil," allows courts, in certain circumstances, to disregard the corporate form and "look beyond the bare legal relationship of the parties to prevent the corporate form from being used to perpetrate injustice, defeat public convenience or

justify wrong." Southern States Co-Operative, Inc. v. Dailey, 167 W. Va. 920, 928 (1981).

Still, under the law of West Virginia, in order to pierce the corporate veil, a court must find that there has been an abuse of the protections provided by the corporate form, and the heavy burden of making such a showing is on the party seeking to invoke the doctrine. See Southern Electrical Supply Co v. Raleigh Cnty. Nat'l Bank, 173 W. Va. 780, 786 (1984). Here, the plaintiffs support their invocation of the doctrine with scant more than legal conclusions insufficiently supported by facts, and have not pled facts within their complaint, nor have they presented facts within their response to this motion to dismiss "to raise a right to relief" under this theory "above the speculative level." Twombly, 550 U.S. at 555.

"The alter-ego doctrines, alternatively 'instrumentality', 'identity', 'agency', 'piercing the corporate veil', or 'disregarding the corporate fiction', are designed to prevent injustice when a corporate form is interposed to perpetrate an intentional wrong, fraud or illegality." Southern Electrical Supply Co., 173 W. Va. at 521-22. Courts have delineated a number of factors to be considered when deciding whether to disregard corporate facades, and due to the high level of culpability which is necessary to justify such an extreme measure, have long cautioned that disregarding the corporate form should not undertaken lightly or without significant justification. See id.

24

In <u>Laya v. Erin Homes, Inc.</u>, 177 W. Va. 343, 347 (1986), the West Virginia Supreme Court of Appeals listed 19 specific factors to be considered, and remarked that the inquiry should focus on the "totality of the circumstances" rather than the application of metaphors, such as "'alter ego,' 'instrumentality,' etc., to describe the unity of the entities and shareholders." <u>Id.</u> at 348.

The plaintiffs argue that the corporate veil should be pierced with regard to all of the defendants because there is "interrelatedness" between the companies, and apparently because there is disregard for corporate formalities.[9] They further assert that the companies and individual defendants are "alter-egos of each other," and "have intentionally engaged in sham transactions to create the appearance . . . that such Defendants are independent entities." However, all of these allegations are conclusory and/or simply state legal terms listed as elements of alter-ego theory of piercing the corporate veil, and thus cannot serve to defeat a motion to dismiss. <u>See</u> <u>Nemet Chevrolet, Ltd.</u>, 591 F.3d at 255 (4th Cir. 2009) ("legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."). Further, they are the exact metaphors that the West Virginia Supreme Court cautioned against applying as justification to pierce in <u>Laya</u>. 177

---

[9]West Virginia Code § 31B-3-303(b) specifically precludes mutual liability of corporations and their members simply due to "The failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers of management of its business."

W. Va. at 348.  The only factual support offered by the plaintiffs in their complaint and throughout their responses is that the companies have an "overlap in ownership and management," "share common office space," "have the same telephone numbers, have the same members and operate in reality as one entity with no separate purpose."  Further, the plaintiffs allege that "defendant Singleton is the only managing member of Alexis Intertainment, LLC.  Alexis has no active officers, conducts no day-to-day business, has no employees or even a checking account; however, Alexas does own 49% of OVA for which Singleton serves as a director.  H.E.B. is also an acronym that stands for Haire, Evans, and Barker."

These factual allegations fall woefully short of establishing that mutual liability through piercing is "plausible" in this case. All that the plaintiffs have alleged is that these defendants are involved in these companies, that the companies are closely related, and essentially that they are small companies with limited purposes.  While occupying the same offices, and having the same phone number and the same members may be contributing factors, without significantly more, such evidence merely shows that these companies and people are related to each other, not that they are actually a single entity and are abusing the corporate form for some nefarious purpose.  Further, all that seems to be factually alleged is that the companies themselves are interrelated, not that the companies are mere instrumentalities of the members and managers who stand behind them.  Of the 19 factors delineated for

consideration by the West Virginia Supreme Court, these plaintiffs have tenuously argued three based upon the facts given, and only with regard to the companies' relationship to each other.  Further, none of the factual arguments offered lend themselves to misuse of the corporate structure, intentional wrong, or illegality.

The defendants also contend that individuals should be held liable for the actions of other individuals under this "alter ego" theory.  However, there is no basis whatsoever to hold individuals mutually liable for actions of other individuals through the use of these concepts.  Further, not all defendants in this case are even alleged to be alter-egos subject to mutual liability for the actions of other defendants, and the bald assertion that the parties acted "individually and collectively" to wrong the plaintiffs lacks any factual support to sustain such a claim.  Thus, insofar as each claim alleges liability on the part of defendants not specifically named in the count, Counts One, Two, Four, Five, Six and Seven are dismissed.  Insofar as the claims name specific defendants as alleged tortfeasors, this Court finds as follows.

Count One of the amended complaint alleges that, specifically Ohio Valley Amusement Company only  committed slander of title when it caused notices of lis pendens to be filed on the plaintiffs' property.  As this count pertains to this defendant only, this Court previously found that the allegations offered met the plaintiffs' obligation to provide the grounds for relief under

Twombly and Iqbal in that the plaintiffs have plead facts sufficient to state a claim for slander of title, particularly that the defendants recorded notices of lis pendens to be filed in Marshall County against the plaintiffs' real property and that the Circuit Court of Marshall County, West Virginia ruled that the defendants improperly filed these notices.[10]   The only element of this count for which this Court required a more definite statement was the other defendants' involvement in the activity alleged.   As previously stated, the plaintiffs have now failed to allege a claim against all defendants other than OVA in Count One.   Thus, Count One is dismissed against all defendants except defendant Ohio Valley Amusement Company.

Count Two alleges tortious interference.   Specifically named in this count are defendants Thomas Brad Singleton, Frank Barker, Don Perry, Scott Haire, OVA, Donna Kitchen and Kimberly Crupe.   As defendants Singleton and Perry have been previously dismissed by this memorandum opinion and order, this count is now only raised against Ohio Valley Amusement, Donna Kitchen, Kimberly Crupe, Scott Haire and Frank Barker.   With regard to the merits of this claims against those defendants against which tortious interference is

---

[10]To prove a claim of slander of title the plaintiff must establish the following elements: "(1) publication of; (2) a false statement; (3) derogatory to plaintiff's title; (4) with malice; (5) causing special damages; and (6) as a result of diminished value in the eyes of third parties."   TXO Production Corp. v. Alliance Resources Corp., 419 S.E.2d 870, 879 (W. Va. 1992).

specifically alleged,[11] this Court previously directed the plaintiffs to identify all third parties with whom the plaintiffs claim to have suffered interference of contractual relations. Further, this Court instructed the plaintiffs to give circumstances as to how the parties interfered with the relationships with the third parties.  This Court believes that the plaintiffs have complied with this direction as to the allegations that remain, and the complaint satisfies the requirements of Twombly and Iqbal only with regard to the specific allegations made against defendants OVA, Donna Kitchen, Kimberly Crupe,[12] Scott Haire and Frank Barker. This count is dismissed as to all other allegations[13] and defendants.

---

[11]To establish a prima facie case of tortious interference, a plaintiff must prove the following elements: "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages."  Syl. Pt. 2, Torbett v. Wheeling Dollar Savs. & Trust Co., 314 S.E.2d 166 (W. Va. 1983).

[12]Defendants Kitchen, Crupe and OVA argue that any actions of Kitchen and Crupe are the liability of OVA alone.  For the reasons stated supra in section III. C., based upon the construction of the allegations made in the amended complaint, this Court cannot find in the context of a Rule 12(b)(6) motion, that these defendants are entitled to the protections of West Virginia Code §§ 31B-3-303(a).

[13]There are a number of tortious interference allegations made against "defendants" in general.  All such allegations are dismissed for failure to state a claim against any of the defendants.  Further with regard to the allegations and defendants which remain, only the specific allegations made against each specific defendant remain with regard to that defendant specifically named.

In Count Four, the plaintiffs allege that defendant Kitchen caused plaintiff Mound City, Inc.'s mail to be opened and that act constituted an invasion of privacy.  This Court previously found that this claim passed muster under <u>Twombly</u> and <u>Iqbal</u>, but required a more definite statement to allege which branch of invasion of privacy defendant Kitchen violated,[14] and to state more specifically how and when defendant Kitchen allegedly caused plaintiff Mound City, Inc.'s mail to be opened.  This Court finds that the plaintiffs have sufficiently complied with this direction in that they have now stated that defendant Kitchen actually opened the mail, which constituted an intrusion into Mound City's seclusion, and that this occurred over a period of several months in 2008.  However, again, the plaintiffs have failed to sufficiently connect defendants other than defendant Kitchen and/or defendant OVA through respondeat superior liability, to this claim through any sufficient factual allegations.  Thus, Count Four is dismissed as to all defendants other than defendant Kitchen and defendant OVA.

Count Five alleges fraud.  Specifically named in this count are defendants Singleton, Haire, Barker, and Perry.  Further, this count refers to the actions alleged in Counts One, Two and Six.  As defendants Singleton and Perry have previously been dismissed on

---

[14]In West Virginia, an invasion of privacy includes: "(1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Syl. pt. 8, <u>Crump v. Beckley Newspapers, Inc.</u>, 320 S.E.2d 70 (W. Va. 1983).

the grounds of insufficient service of process, Count Five will only proceed against defendants Haire and Barker and all defendants which remain in Counts One, Two and Six.   This Court's previous order directed the plaintiffs to file a more definite statement which described the "scheme or artifice to defraud" as to the alleged fraud, and provide dates and circumstances. Among the allegations raised in the Amended Complaint, and following the dismissal of all claims against defendant Singleton alone, the following allegations have satisfied this Court's previous Order and will be permitted to move forward, in paragraph 58 of the First Amended Complaint, subpart d sufficiently alleges a cause of action against defendant OVA only, subpart e has sufficiently alleged a cause of action against defendants OVA, Kitchen, Crupe, Haire and Barker, subpart f has alleged a cause of action against defendants Haire and Barker[15], and subpart g has also alleged a cause of action against Haire and Barker. With the exception of paragraph 61, which alleged damages, all other allegations in Count Five are dismissed. The defendants' motions to dismiss are granted in part, and denied in part as described above.

Count Six only specifically alleges the act of conversion against defendant Singleton, and alleges that defendants Barker, Perry and Haire instructed defendant Singleton to commit the acts alle.  While defendants Singleton and Perry have been previously dismissed for insufficient service of process, this Court finds

---

[15]For the reasons described in discussion of Count Six infra.

31

that the plaintiffs have sufficiently pled the act conversion as to defendant Singleton based upon the pleading requirements of Rule 9(c).  Thus, because pursuant to the Restatement (Second) of Torts § 876, those who aid and abet in tortious conduct can be equally liable for such conduct, the defendants' motions to dismiss will be denied as to the allegations made against defendants Haire and Barker in paragraphs 63 and 64. As to all other defendants and allegations, the motions to dismiss are granted.

Finally, Count Seven, a claim for civil conspiracy, names no specific defendants as engaging in the conspiracy, but alleges that the conspiracy to deprive the plaintiffs of their property was one in which all defendants engaged and refers to the acts of the conspiracy as the earlier counts of the complaint, as well as an action of wrongfully contacting the government to make false accusations about Mound City.

In West Virginia, a "civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. pt. 8, Dunn v. Rockwell, 689 S.E.2d 255 (W. Va. 2009).  While the wrongful acts done by the defendants to the injury of the plaintiffs, not the conspiracy, creates the cause of action, the existence of the conspiracy must nonetheless be factually alleged to support a claim of civil conspiracy.  "The essence of a conspiracy is an agreement between two or more persons to accomplish an unlawful purpose."   Precision Piping &

32

Instruments, Inc. v. E.I. duPont De Nemours & Co., 707 F. Supp. 225, 229 (S.D. W. Va. 1989).

Here, the plaintiffs have failed to satisfy this requirement of factually pleading conspiracy.  The plaintiffs again say that the defendants "individually and collectively" committed wrongs against them and that the defendants "engaged in a civil conspiracy," but do not offer support for these statement.  The Fourth Circuit has previously expressed the need to support conclusory statements and recitations of legal terms of art with factual allegations.  See Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (the Court need not accept plaintiffs' legal conclusions and unwarranted inferences or arguments).  The plaintiffs have failed to allege more than that which has already been deemed by this Court as insufficient to connect these defendants to each other.  Simply concluding that the parties acted "individually and collectively" lacks any factual support whatsoever, and Count Seven must be, and is, dismissed as a result.

Further, in accordance with this Court's conclusion that the plaintiff has only sufficiently alleged plausible claims against the parties specifically named in each count of the amended complaint, the parties not specifically named in any count must be dismissed.  Thus, this Court finds that, in addition to the defendants previously dismissed, defendants Koffee Shop Inc., H.E.B., LLC, MLH Investments, LLC, and Alexas Intertainment, LLC are dismissed from this action.

E.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(7) for Failure to Join an Indispensable Party

Defendants Singleton, Haire, Perry, Barker, Alexas Intertainment, LLC, H.E.B., LLC, Steven Evans, MLH Investments, LLC and Keystone Exploration, Ltd. also move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(7), arguing that Francis C. Tucker is an indispensable and necessary party under Federal Rule of Civil Procedure 19(a) because he "claimed an interest to the subject of the action" and because he "is so situated that the disposition of the action in [his] absence may leave" these defendants "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."  Further, they argue that the case must be dismissed because Francis Tucker cannot be joined, as he is a debtor in the related involuntary bankruptcy proceedings, and any litigation involving Francis Tucker must be stayed pending the resolution of the bankruptcy proceedings.  11 U.S.C. § 362.  This Court agrees that Mr. Tucker cannot be joined in this action due to his pending involuntary bankruptcy proceeding, thus the inquiry into this motion is with regard to whether Mr. Tucker is truly an indispensable party, and if he is, whether dismissal is the proper remedy.

In support of these issues, the movants argue that Francis Tucker is the real party in interest in this case because he transferred plaintiff Mound City, Inc., of which he and his son were once the sole owners, to his mother, plaintiff Helen Tucker,

34

fraudulently and with the sole intention of shielding Mound City from Mr. Tucker's creditors.  In support of these contentions, they cite the United States Bankruptcy Court for the Northern District of West Virginia ruling in the involuntary bankruptcy proceedings of Francis Tucker, which granted partial summary judgment for Tucker's creditors on the basis that this transfer was fraudulent. They further support their argument that Francis Tucker is necessary pursuant to Federal Rule of Civil Procedure 19(a) by pointing out that many of the parties to this action are also parties to multiple state court actions involving Mr. Tucker and the same business disputes stemming from the 2008 bankruptcy and reorganization of OVA which gave rise to this action.  They argue that because these many other actions involve the same transactions with Francis Tucker, but because Mr. Tucker is not a party to the instant action, there is substantial risk of and inconsistent judgment to which the defendants may be subject, but Mr. Tucker will not.

However, the defendants also point out that all state court proceedings involving Mr. Tucker have been stayed pending the resolution of the related bankruptcy proceedings.  Thus, no case is currently proceeding in state court which may result in a judgment which may be inconsistent with one that this Court may enter. Further, while it is conceded that the Bankruptcy Court found that the transfer of plaintiff Mound City to plaintiff Helen Tucker was fraudulent, this Court is unable to discern how any rulings on the

part of any court with regard to the validity of this transfer would create an inconsistent result with any judgment that this Court may enter in this case.

At this time, as this Court articulated in its previous order, without more evidence and explanation as to the substantiality of the risk to the defendants of inconsistent obligations, this Court is not able to say with confidence whether or not Francis Tucker is an indispensable party as the term is defined by Rule 19(a). Further, as the plaintiffs rightly contend, even if Mr. Tucker were to be determined to be an necessary party who must be joined "if feasible," dismissal as a result of an inability to join him is a "drastic remedy," which should be avoided if at all possible. Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915 (4th Cir. 1999) (internal citation omitted). This Court's finding that the chance of inconsistent obligations being placed on these defendants is questionable further weighs against dismissal. Owen's-Illinois, Inc., 186 F.3d at 441 (emphasis added) (Dismissal should only result if the negative result of non-joinder, "cannot be remedied and prejudice or inefficiency will certainly result"). Accordingly, the motion to dismiss is denied, and defendants Crupe, Kitchen, OVA, and Koffee Shop, Inc's motions to join in this motion to dismiss are denied as moot.

IV.  Conclusion

As stated above, and for the reasons stated above, this Court GRANTS IN PART and DENIES IN PART defendants Thomas Brad Singleton,

Scott Haire, Don Perry, Frank Barker, Alexas Intertainment, LLC, H.E.B., LLC, Steven Evans, MLH Investments, LLC and Keystone Exploration, Ltd.'s motion to dismiss the amended complaint (ECF No. 91), GRANTS IN PART and DENIES IN PART defendants Ohio Valley Amusement Company, Donna Kitchen and Kimberly Crupe's motion to dismiss (ECF No. 82), and GRANTS defendant Koffee Shop, Inc.'s motion to dismiss (ECF No. 80).  Defendants Ohio Valley Amusement Company, Donna Kitchen and Kimberly Crupe's motion for joinder in motion of Singleton, et al. to dismiss first amended complaint (ECF No. 93) is DENIED AS MOOT, and defendant Koffee Shop, Inc.'s joinder in the Singleton defendants' motion to dismiss (ECF No. 94) is similarly DENIED AS MOOT.  All claims against defendants Thomas Brad Singleton, Don Perry, Alexas Intertainment, LLC, H.E.B., LLC, Steven Evans, MLH Investments, LLC, Keystone Exploration, Ltd., and Koffee Shop, Inc. are DISMISSED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit copies of this order to counsel of record herein.

DATED:     February 15, 2012


                    /s/ Frederick P. Stamp, Jr.
                    FREDERICK P. STAMP, JR.
                    UNITED STATES DISTRICT JUDGE

37